IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON


KIMBERLY B.,[1]

        Plaintiff,

   v.

NANCY BERRYHILL, Acting Commissioner of
Social Security Administration,

        Defendant.

No. 3:18-cv-01677-HZ

OPINION & ORDER


Jeffrey H. Baird
Dellert Baird Law Offices, PLLC
6525 California Ave SW, Suite 101
Seattle, WA 98136

   Attorney for Plaintiff

Renata Gowie
U.S. Attorney's Office
District of Oregon
1000 SW Third Avenue, Suite 600
Portland, OR 97204

---

[1] In the interest of privacy, this Opinion uses only the first name and the initial of the last name of the non-governmental party or parties in this case. Where applicable, this Opinion uses the same designation for a non-governmental party's immediate family member.

Stephen Dmetruk
Office of the General Counsel
Social Security Administration
701 Fifth Avenue, Suite 2900 M/S 221A
Seattle, WA 98104-7075

    Attorneys for Defendant

HERNÁNDEZ, District Judge:

Plaintiff Kimberly B. brings this action for judicial review of the Commissioner's final decision denying her application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act. This Court has jurisdiction under 42 U.S.C. § 405(g). The Court reverses the Commissioner's decision and remands for further proceedings.

## PROCEDURAL BACKGROUND

Plaintiff applied for DIB on August 18, 2015, alleging an onset date of July 31, 2011. Tr. 212.[2] Her application was denied initially and on reconsideration. Tr. 124, 134-38.

On June 15, 2017, Plaintiff appeared, with counsel, for a hearing before an Administrative Law Judge (ALJ). Tr. 30-53. On September 14, 2017, the ALJ found Plaintiff not disabled. Tr. 13-23. The Appeals Council denied review. Tr. 1-6.

## FACTUAL BACKGROUND

Plaintiff alleges disability on July 31, 2011. Tr. 212. At the time of the hearing, she was sixty three years old. Tr. 30, 54. She has a high school education and has past relevant work experience as a grocery store cashier and manager. Tr. 37, 47.

---

[2] Citations to "Tr." refer to the page(s) indicated in the official transcript of the administrative record, filed herein as Docket No. 8.

# SEQUENTIAL DISABILITY EVALUATION

A claimant is disabled if they are unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). Disability claims are evaluated according to a five-step procedure. *See Valentine v. Comm'r*, 574 F.3d 685, 689 (9th Cir. 2009) (in social security cases, agency uses five-step procedure to determine disability). The claimant bears the ultimate burden of proving disability. *Id.*

In the first step, the Commissioner determines whether a claimant is engaged in "substantial gainful activity." If so, the claimant is not disabled. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. §§ 404.1520(b), 416.920(b). In step two, the Commissioner determines whether the claimant has a "medically severe impairment or combination of impairments." *Yuckert*, 482 U.S. at 140-41; 20 C.F.R. §§ 404.1520(c), 416.920(c). If not, the claimant is not disabled. *Id.*

In step three, the Commissioner determines whether the claimant's impairments, singly or in combination, meet or equal "one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity." *Yuckert*, 482 U.S. at 141; 20 C.F.R. §§ 404.1520(d), 416.920(d). If so, the claimant is conclusively presumed disabled; if not, the Commissioner proceeds to step four. *Yuckert*, 482 U.S. at 141.

In step four, the Commissioner determines whether the claimant, despite any impairment(s), has the residual functional capacity (RFC) to perform "past relevant work." 20 C.F.R. §§ 404.1520(e), 416.920(e). If the claimant can perform past relevant work, the claimant is not disabled. If the claimant cannot perform past relevant work, the burden shifts to the

Commissioner. In step five, the Commissioner must establish that the claimant can perform other work. *Yuckert*, 482 U.S. at 141-42; 20 C.F.R. §§ 404.1520(e)-(f), 416.920(e)-(f). If the Commissioner meets his burden and proves that the claimant can perform other work that exists in the national economy, the claimant is not disabled. 20 C.F.R. §§ 404.1566, 416.966.

## THE ALJ'S DECISION

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since July 31, 2011, the onset date for disability. Tr. 15, Finding 2. The ALJ noted that although Plaintiff had worked for a short time in 2012, the work she performed did not rise to the level of substantial gainful activity. *Id.* At step two, the ALJ found that Plaintiff had "the following severe impairments: leukemia and history of recurrent kidney stones." Tr. 15, Finding 3. At step three, the ALJ found that Plaintiff's impairments did not meet or equal the severity of a listed impairment. Tr. 17, Finding 4. At step four, the ALJ concluded that Plaintiff had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) with the following limitations: no more than occasional climbing and no more than frequent stooping, kneeling, crouching, or crawling. Tr. 17, Finding 5. The ALJ found that Plaintiff could perform her past relevant work as a grocery store cashier and grocery store manager with those limitations. Tr. 23, Finding 6. As a result, the ALJ found at step four that Plaintiff was not disabled. *Id.*

## STANDARD OF REVIEW

A court may set aside the Commissioner's denial of benefits only when the Commissioner's findings "are based on legal error or are not supported by substantial evidence in the record as a whole." *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009) (internal quotation marks omitted). "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to

support a conclusion." *Id.* (internal quotation marks omitted). The court considers the record as a whole, including both the evidence that supports and detracts from the Commissioner's decision. *Id.*; *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007). "Where the evidence is susceptible to more than one rational interpretation, the ALJ's decision must be affirmed." *Vasquez*, 572 F.3d at 591 (internal quotation marks and brackets omitted); *see also Massachi v. Astrue*, 486 F.3d 1149, 1152 (9th Cir. 2007) ("Where the evidence as a whole can support either a grant or a denial, [the court] may not substitute [its] judgment for the ALJ's") (internal quotation marks omitted).

## DISCUSSION

Plaintiff appeals the ALJ's decision on the ground that the ALJ did not provide specific, clear, and convincing reasons for rejecting Plaintiff's allegations about the severity of her medication side effects and failed to assess their effect on her work productivity in determining that she was able to perform past relevant work.

A claimant's report of her subjective symptoms is analyzed in a two-step process:

> First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged. In this analysis, the claimant is *not* required to show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom. Nor must a claimant produce objective medical evidence of the pain or fatigue itself, or the severity thereof.
>
> If the claimant satisfies the first step of this analysis, and there is no evidence of malingering, the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so. This is not an easy requirement to meet: The clear and convincing standard is the most demanding required in Social Security cases.

*Revels v. Berryhill*, 874 F.3d 648, 655 (9th Cir. 2017) (quoting *Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014)). To determine whether the intensity, persistence, and limiting effects of a claimant's symptoms interfere with their ability to perform work-related activities, the

5 - OPINION & ORDER

Commissioner must "examine the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record." SSR 16-03p, 2017 WL 5180304, at *4 (Oct. 25, 2017). The Commissioner will also "evaluate whether the [claimant's] statements are consistent with objective medical evidence and the other evidence." *Id.* at *6.

To determine the extent to which symptoms limit a claimant's ability to function, the Commissioner considers the claimant's daily activities; the location, duration, frequency, and intensity of the symptoms; factors that precipitate and aggravate the symptoms; the type, dosage, effectiveness, and side effects of any medication an individual takes to alleviate the symptoms; any measures other than treatment that an individual uses to alleviate symptoms (e.g., standing for 15 to 20 minutes every hour); and other relevant considerations. *Id.* at *7-8.

At the first step of the credibility determination, the ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms." Tr. 18. The ALJ did not find any evidence of malingering. At the second step of the analysis, the ALJ found that the severity of Plaintiff's symptoms was "not entirely consistent with the medical evidence and other evidence in the record." *Id.*

In support of that conclusion, the ALJ cited Plaintiff's daily activities and treatment records in which she reported she was "doing well" and felt "great." Tr. 18-19. The ALJ noted that Plaintiff cared for her own personal hygiene, performed some household chores, prepared meals, operated a motor vehicle, and "was responsible for caring for her family members." Tr. 18. The ALJ also noted several times that Plaintiff had reported to her physicians that she walked several miles per day. Tr. 18-20. In evaluating her treatment records, it appears that the

ALJ focused on symptoms of Plaintiff's kidney stones and leukemia, but not on the side effects of her leukemia medication, Gleevec. Several of the medical records cited by the ALJ in his discussion of Plaintiff's treatment include complaints about nausea, vomiting, and diarrhea, but the ALJ did not note or discuss those symptoms in his step four analysis. Tr. 17-23.

For example, the ALJ cited Plaintiff's treatment records from Providence Health and Services for the period of July 2011 to October 2012, and her reports to her treating physicians during that time that she was "doing well." Tr. 18 *citing* Tr. 497-504. But during that time frame, Plaintiff also reported missing doses of her Gleevec due to feeling "too full," Tr. 497, "nausea," Tr. 500, and "stressful days at work," Tr. 504. In July 2011, she reported persistent bulimia that occurred less than once a week, Tr. 504, and in December 2011, she denied side effects and had good energy, Tr. 502.

The ALJ also relied on "Exhibit 6F/3," an April 2013 follow up visit for her leukemia, in which Plaintiff reported "mild nausea with the medication that she has not been interested in taking anti-emetics [sic]." Tr. 564. At that visit, Plaintiff's doctor noted that she discussed with Plaintiff her history of problems adhering to her medication and told Plaintiff that she could try a different leukemia medication to see if she "would have better luck adhering to a different side effect profile," but Plaintiff wanted to continue taking Gleevec at that time. Tr. 565.

The ALJ noted that at a May 2015 leukemia follow up, Plaintiff "reported that she was doing pretty well . . . reported that she was 'super healthy'" and that she takes regular walks. Tr. 20 (citing Tr. 651). At that visit, Plaintiff reported taking Gleevec 5 days a week because she "feels better" if she does not take it every day, Tr. 651, but the ALJ did not discuss that in his decision. Tr. 20. The ALJ's summarization of Plaintiff's treatment between February 2016 and February 2017 also makes no mention of nausea. Tr. 20. But Plaintiff had reported nausea and

using her anti-emetics four times per week in August 2016, Tr. 895, improvement of her nausea with Compazine in November 2016, Tr. 899, and continued intermittent nausea in February 2017, Tr. 905.

The ALJ found that Plaintiff's allegations of debilitating symptoms "are not entirely consistent with the medical evidence," Tr. 20, citing her physical and mental status examinations, normal gait and station, hematologic remission of her leukemia, ability to walk five miles per day, and "fairly strong" ability to perform her activities of daily living, Tr. 21. He did not address whether the nausea, vomiting, and diarrhea she experienced as a result of taking Gleevec had any impact on her level of functioning. *Id.* Similarly, the ALJ's discussion of the state agency medical consultants' opinions makes no mention of the side effects of Gleevec, Tr. 22, although the medical opinions do discuss the side effects. Tr. 86, 102. In fact, the only consideration the ALJ appears to have given Plaintiff's reports of nausea, vomiting, and diarrhea was his determination that her abdominal issues warrant an additional limitation: "[G]iven the claimant's complaints of fatigue and abdominal issues, the claimant is further provided additional postural limitations." Tr. 23. The ALJ incorporated the lifting, carrying, and other limitations recommended by the state agency medical consultants into the RFC, including the postural limitation for Plaintiff's "abdominal issues," and found that Plaintiff could perform less than the full range of light work. Tr. 22-23.

The ALJ failed to adequately consider Plaintiff's reports of nausea, vomiting and diarrhea. Plaintiff testified at the hearing that the side effects of taking Gleevec are the primary reason that she cannot work. Tr. 39-41. She testified that her doctor put her on a second medication to treat her nausea, "[a]nd it really helped." Tr. 39-40. She also testified that Gleevec gives her diarrhea and that she needs use the bathroom three or four times every

morning before noon after she takes it. Tr. 40. Still, she sometimes got sick after taking Gleevec. *Id*.

The ALJ can reject Plaintiff's testimony about the severity of her symptoms "only by offering specific, clear[,] and convincing reasons for doing so." *Revels*, 874 F.3d at 655. To meet that standard, the ALJ must "specify which testimony she finds not credible, and then provide clear and convincing reasons, supported by evidence in the record, to support that credibility determination." *Brown-Hunter v. Colvin*, 806 F.3d 487, 489 (9th Cir. 2015). An ALJ fails to provide specific, clear, and convincing reasons for rejecting a claimant's testimony "by simply reciting the medical evidence in support of his or her residual functional capacity determination." *Id.* Here, the ALJ provided no reason for rejecting Plaintiff's testimony about the side effects of her medication and, as far as the Court can tell, did not consider whether to accept it or reject it. Without any discussion of Plaintiff's undisputed testimony that she experienced nausea, diarrhea, and vomiting from taking Gleevec, the ALJ failed to meet his burden to provide a specific, clear, and convincing reason to reject it. *Cochrane v. Berryhill*, 260 F. Supp. 3d 1317, 1330 (D. Or. 2017).

The Commissioner urges the Court to affirm the ALJ's decision because Plaintiff's medical records do not support her allegations of debilitating medication side effects. Even if that is true, and even if the ALJ had cited those records in his decision (he did not), that still would be insufficient to meet the specific, clear, and convincing standard for rejecting Plaintiff's testimony. *Brown-Hunter*, 806 F.3d at 489. It is the Commissioner, not the Court, who must make factual findings in the first instance. *Arkansas v. Oklahoma*, 503 U.S. 91, 113 (1992) (a reviewing court "should accept the *agency's* factual findings if those findings are supported by substantial evidence . . . not supplant the agency's findings merely by identifying alternative

findings that could be supported by substantial evidence." (emphasis in original)). This Court cannot supply findings that the ALJ could have made based on the record in order to affirm the ALJ's decision. *Id.*; *Burrell v. Colvin*, 775 F.3d 1133, 1138 (9th Cir. 2014) (citing *Connett*, 340 F.3d at 873-74) (a reviewing court may not "take a general finding—an unspecified conflict between Claimant's testimony about daily activities and her reports to doctors—and comb the administrative record to find specific conflicts.").

The Commissioner argues that the ALJ "found Plaintiff's allegations of debilitating nausea were inconsistent with her statements that her nausea was mild and that she was "super healthy" and "feeling great" and that the ALJ "found that Plaintiff's allegations of debilitating nausea were inconsistent with her refusal of anti-emetic medication." Def. Brief 4-7, ECF 11. In support of those arguments, the Commissioner cites to Plaintiff's medical records, not to the ALJ's decision. *Id.* The ALJ did not compare Plaintiff's allegation of debilitating nausea with her reports to medical providers, much less find any inconsistency between the allegations of nausea and her statements to her providers. Similarly, the Commissioner argues that the ALJ found Plaintiff's ability to walk five miles a day inconsistent with her allegations of fatigue, nausea, and diarrhea. Again, the ALJ made no such finding. The only finding the ALJ made regarding Plaintiff's nausea and diarrhea was his finding that her "abdominal issues" required him to incorporate additional postural limitations into the RFC. Tr. 23.

The Commissioner's argument that the ALJ's assignment of "great weight" to the state agency medical consultants' opinions is a specific reason for rejecting Plaintiff's testimony also fails. The ALJ explained that he gave great weight to the reviewing physicians' opinions "to the extent [that] they were consistent [with] the residual functional capacity." Tr. 22. However, the residual functional capacity provides "additional postural limitations" to accommodate Plaintiff's

"fatigue and abdominal issues," which is inconsistent with the agency reviewing physicians' opinions that Plaintiff does not have any functional limitations caused by her medication side effects. Tr. 102.

As a result, the ALJ failed to provide specific, clear, and convincing reasons supported by substantial evidence in the record to reject Plaintiff's testimony that the side effects of her medication prevent her from performing her past relevant work.

## CONCLUSION

Based on the foregoing, the Commissioner's decision is REVERSED and REMANDED for further administrative proceedings.

IT IS SO ORDERED.

Dated: December 7, 2019.

*Marco Hernandez*
MARCO A. HERNÁNDEZ
United States District Judge

11 - OPINION & ORDER